Good morning. My name is Ben Coleman. I represent Mr. Betts. I'll watch the clock and try to save a few minutes for rebuttal also. This is obviously an appeal from a denial of a motion to withdraw a guilty plea. And we are challenging on appeal the denial as to only two of the three counts. Mr. Betts pled to a conspiracy, a substantive armed bank robbery, and a 924C. And we're just challenging the denial as to the substantive armed bank robbery and the 924C. It's our position that under McTiernan, Mr. Betts' trial attorney gave him deficient advice about realistically possible defenses as to those two counts. And therefore, the plea should have been withdrawn. Specifically, we believe the advice was deficient in two respects. The first, which I don't think there's much dispute, is that the attorney advised Mr. Betts that he could be held accountable on those two counts under an aiding and abetting theory based on the information he was providing to the attorney. And it's our position that the law is clear in this circuit that merely allowing people to plan a bank robbery in your backyard would not be good enough for aiding and abetting an armed bank robbery or a 924C. What if you reasonably perceive they're going to use guns? Excuse me, Your Honor? What if you reasonably perceive they're going to use guns? If he had knowledge of the use of the guns, I believe that would constitute aiding and abetting. If he had reasonable foreseeability, that would be a Pinkerton theory, and he could be held accountable under the Pinkerton theory. Our position is the second way that the advice was deficient was that he had a realistically possible defense to a Pinkerton theory, and that was a due process defense that his role in the conspiracy was so minimal that the reasonable foreseeability analysis should not apply. Well, it doesn't say in the factual basis that's listed at the time of the proffer, but you contend that Mr. Betts had no knowledge or intent regarding his co-conspirator's use of a firearm. But Sanders testified at Sabbath's trial that it was Mr. Betts who provided the firearms to be used. And I think that there's also in some FBI report, there's one of the co-whatever you want to call them, co-conspirators, that indicates that Betts was going to provide the firearms. So do you have any authority that the court can only use information that a defendant admits as opposed to other evidence that's in the record? Well, I think the court can look at the entire record to determine whether a defendant would have, whether it was a realistic possibility that a reasonable defendant would have gone to trial. Obviously, Sanders was a cooperating co-defendant with enormous credibility problems. She had a prior record, a history of drug abuse and mental illness, and that's all in the record. And it would have been a lot of fodder for cross-examination. Mr. Betts was insistent with his lawyer that all he did was allow them to use the backyard. He took a polygraph examination and passed it on that. And if trial lawyers, if their advice as to whether to plead guilty doesn't include their client's insistence and simply were to base it on what another witness, a cooperating witness, may say, we would barely ever have trials. But he's facing evidence that someone is going to say he provided the firearms, whether there's credibility issues or not. That's on the radar screen, right? Absolutely. Absolutely. And the question here, though, is Mr. Betts was insistent with his lawyer. And the problem is that the lawyer never told them, if you're insistent on this version, and he wanted to take a polygraph examination, and he ultimately did after that lawyer was relieved and passed it. But the lawyer should have said, if you're insistent on this version, you do have possible defenses. We do have a defense under 18 in the betting liability. And we do have a defense, a due process defense under Pinkerton liability. Now, maybe he would lose. Maybe the jury would believe Sanders, the co-defendant. Okay. So if you want to set it aside, you have to show the manifest injustice, right? Correct. All right. And Sanders testified at a trial in the interim, correct? And what happened at that trial? That was the co-defendant, it was a bench trial, and I believe he was found guilty by the court. Okay. And so at this point, someone believes Sanders, right? Well, the- So a manifest injustice, obviously, if you could show factual innocence at the time trying to withdraw a plea, you would try to do that, right? And here they put on evidence that actually what Sanders had testified, and I think someone else was found to have given some perjured testimony or something along the line. So there's, I guess, I'm not sure that's, that seems to be evidence that there's not a manifest injustice. How do I look at that? Well, I think the standard under McTiernan is whether there was a reasonably possible defense. I don't have to show that he was absolutely innocent of these two charges and that he would absolutely win the trial. I don't have to show that a jury would not believe Sanders. I just have to show that there is a realistic possibility of the defense. I would add that at that other trial, the other co-defendant testified- Where does the manifest injustice standard come in? Where does that apply? Well, I believe that the standard is, is there a fair and just reason for the withdrawal? That's the standard. If you file a motion to withdraw a guilty plea before sentencing, the standard is, is there a fair and just reason? And McTiernan says that there is a fair and just reason if the lawyer gives deficient advice about realistically possible defenses. And McTiernan further clarifies that you don't have to show that you would absolutely win on those defenses. You just have to show that they were realistically possible. Well, but they're less realistically possible after someone's lost on that defense, right? Well, the co-defendant had an entirely different factual situation. And we have here a defendant who has maintained both in his interrogation with the FBI that all he did was let him use the backyard. He took a polygraph examination and passed it that all he did was let him use the backyard. And the fact that the court may have credited some of Sanders' testimony at another trial doesn't mean that she would have been believable as to this particular, as to Mr. Betz's particular involvement. What about the obstruction of justice enhancement that was given in the sentencing and the description of the trial judge about the lack of credibility on the part of the witness who recanted? Well, I'm not saying that we would have necessarily, if we get a trial, that we would call that witness. I think that witness is probably tainted on both sides of the fence. He's made statements all over the place. But our client can certainly tell us that. But when your client was advised, that witness who had not yet recanted his testimony, plus Sanders, were both saying that Betz had given the gun to them, right? And isn't that part of the whole sequela of evidence that's eventually going to be presented by someone? You might not want to have it in there, but isn't it all coming in at some point? And doesn't the lawyer, when they advise their client based on all the evidence that they have at their disposal, it seems to me that what you're trying to do at this point is hold this first attorney to a standard of evidence that wasn't in existence at the time that the advice was given. I don't mean a legal standard. What I'm saying is she looked at the evidence that was out there, gave her best advice, and now you're trying to say, well, the world changed, and I don't quite get it. Okay, well, I'm not saying that. And I agree with Your Honor that the lawyer should have and could have, but didn't, say, listen, you have – we could possibly say that you're not guilty under nading and abetting theory, under Pinkerton theory, because your role is so minimal. We could make those defenses. However, there are two potentially cooperating witnesses out there who point the finger right at you on the guns, and I am recommending that you not go forward with trial because the jury is going to believe these two witnesses and they're not going to believe you. The lawyer could have said that, and if the lawyer had said that, I wouldn't be here. That would be sound advice telling the client, listen, you got a shot, but you know what? That shot's not very good. But that's not what the lawyer did here. The lawyer said, listen, based on the story you're telling me, that you only let them use the backyard, you're done. That constitutes liability under aiding and abetting and Pinkerton. So even putting aside what these people say, based on your own confession and admissions to me, you are guilty on these two counts, therefore you have to plead guilty. And that's the problem that we see in this case. It may not matter, but is this really an experienced lawyer or – Well, her declaration was that she had 25 years of criminal experience. How's your client, Brewer? Brewer, yes. She's been around a long time now. She has been around a long time. And I'm not – I'm not, you know, trying to tear her down. I'm just saying that – Well, sure you are. You're trying to say she doesn't know how to advise her client. Well, in this particular – If that doesn't tear me down, if you tell me – you're a great judge, except you just can't decide cases, you darn fool. It comes back a little bit tearing. Well, I mean, everyone makes mistakes. I've made mistakes. I probably made them in this very case. And it happens. And that's what happened here. The lawyer – if the lawyer had given the advice that I had just mentioned, I wouldn't be here. But that's not the advice the lawyer gave. It was a mistake. It happened. And that's a fair and just reason to withdraw the plea. I'll save the 50 seconds. I'll give you a minute. I'll make that up. Good morning, Your Honors, and may it please the Court. Mark Yohalam on behalf of the United States. I want to just start with what is and is not in the record. There is nothing in the record that shows that defense counsel did not give the advice that my opponent just described. There is nothing in the 8-page declaration from defendant, in the 4-page declaration from substitute defense counsel, in the 48-page hearing on the motion to withdraw the plea, in the 10-page motion to withdraw the plea. In none of those is there any indication that that advice was not given. To the contrary, and I'm looking at ER 65, which is the declaration of Ms. Brewer, it does not really go to this issue because this issue, this claim wasn't raised below. But what she does say is that I advised Betz that Sabbath's statements would not be used against him. Sabbath was the flip-flopping witness. I focused the discussion of a potential guilty plea on Sanders' statements and on Betz's own admissions. I advised him that I did not believe he had Okay, Sanders' statement at that point was a statement to an FBI agent? Yes, and Sanders had been identified as a cooperating witness who was going to testify on behalf of the government. Okay, and between the advice and at the time of the sentencing, Sanders testified? Yes, that is correct. Sanders had not yet testified at the time the advice was given. That is correct. Neither Sanders nor Sabbath had testified. Okay. Ms. Brewer goes on to say that she advised him based on the evidence presented in discovery and her knowledge of conspiracy law, there was not a viable defense. She says that I did not, I advised him to plead guilty based on my assessment of the evidence and my determination that he did not have a viable defense, but I did not tell him he had to plead guilty. I discussed his options with him and his mother and fully explained his liability under conspiracy law. I did not dismiss his claims. I believed it was my duty to have an objective and realistic discussion of his criminal liability under conspiracy law. Now, that is ambiguous as to whether this particular due process defense was discussed, but this isn't a case where ambiguity adheres to the defendant's benefit. It was his obligation to make this claim out below, and I would contrast this case with McTiernan. McTiernan is basically the high-water mark in this circuit for letting someone get out of his guilty plea. In McTiernan, there was a declaration filed by the defendant saying, I was never advised of my ability to bring a suppression motion. That was brought before the district court. The district court ruled on it. It then went on appeal to this court. Here, that is not the posture at all, and that's why the government urges that plein air review should apply. But even if you just applied abuse of discretion, it really doesn't make a difference, because how could the district court abuse its discretion by not letting someone out of a guilty plea on a basis that person never raised? If a defendant doesn't say to the district court, I was never told about this foreseeability defense, how could a district court be obligated in its discretion to sua sponte, let him out? So I think the standard of review, although it should be plein air, ultimately whether you take the Second Circuit's waiver approach, the First Circuit's plein air approach, or this defendant's proposed abuse of discretion standard, you still get to the same place. I want to also talk a moment about the defense that he's saying wasn't brought to his attention, which I think is just a frivolous defense, Your Honors. Defendant has cited no cases, to my knowledge, at least no cases from this circuit, that say even where it was foreseeable that a co-defendant would use a gun, nevertheless, if you are a minor participant, you may not be convicted of 924C or substantive armed bank robbery. The best you can find in this circuit are cases that sort of throw in this due process language in the midst of a foreseeability discussion. But what I would look at as the best example of what's going on there is the Hoskins case. What Hoskins says is that, look, in some cases you can infer foreseeability. For example, if someone is a ringleader, then you can infer that it would be foreseeable to him that guns would be used. If someone is a completely trivial member of the conspiracy, then maybe you can't draw that inference as a matter of due process. But here it's not a question of inferences because the defendant admitted over and over again that, in fact, it was foreseeable. He admitted in three different ways during his plea policy. And I just noted while going through the record one more time in preparing for argument today that even in his declaration that he submitted to the court when trying to withdraw on these other three grounds, what he says is that he believed that the robbery crew was planning some violent kind of gang activity. And that's at ER 97. So even in his own words, he's admitting that violence is foreseeable to him. So under the Hoskins approach, foreseeability is the touchstone in this circuit, and there would be no defense on that basis. So basically what the defendant's argument boils down to, whether you apply abusive discretion or plain error, is that the district court should have invented this due process defense, which has no precedent within this circuit, that wasn't raised by defendant, and on that basis let him out of his solemnly entered guilty plea. Well, let me ask you about Sanders' testimony that Betz provided the firearm. That was not before the court at the time Betz entered the plea, correct? But it was at the time that the motion to withdraw the plea was denied and judgment was entered. Can such evidence of his testimony be used to support the guilty plea, even though it was not before the court at the time that the plea was entered? Or does it go to manifest injustice? What do you do with that? The defendant isn't challenging the sufficiency of the guilty plea. He's saying that he should have been allowed to withdraw from it. So from sort of a Rule 11 standpoint, I don't think that that's really the issue before the court. And I think that in terms of the sufficiency of the factual basis, as I said, defendant says three different times that it was foreseeable to him that they would use guns. He says that the government and the prosecutor gave her factual basis. So what was the purpose of Sanders' testimony before the judgment was entered? What was the purpose? Why did the prosecutor put that evidence on? With respect to the ringleader, Sabbath, who was tried, Sanders just sort of gave the story of the bank robbery. So she said, this is what defendant Betz did, this is what defendant Sabbath did, this is what I did. But why was it presented at Betz's judgment? At Betz's sentencing hearing. Sentencing, yes. Because it was relevant to whether he was a minor or minimal participant. And the district court found he was not a minor or minimal participant. So is that considered on the entry? What do you do with that? Well, I think the moment that the discretionary decision that is under review by this court is the district court's determination that there was not a fair and just reason for him to withdraw from his guilty plea. Or more specifically, that the three reasons given by defendant, one, misadvice about punishment, two, newly discovered evidence from the lie detector, three, newly discovered evidence from Sabbath's trial testimony, that those were not fair and just reasons. At that time, however, the district court also had before it Sanders' testimony at Sabbath's trial, as well as FBI 302 reports showing that she had consistently said the same thing, and that Sabbath had also said that defendant provided guns. So the district court had all that in front of it, and I think the reason why it's relevant is that it sort of goes to the incredible implausibility of what defendant was saying and defendant's lack of credibility in his own declaration. I don't know if the court has a chance to read it, but his declaration in the lie detector test are really problematic, because all along he's been saying, yes, I gave them clothes, yes, I gave them pillowcases, but no, I didn't give them guns. Suddenly, he now has this lie detector test that says, oh, by the way, I also didn't give them pillowcases or clothes. I really didn't do anything. So, you know, I think what the reason why at the motion to withdraw his guilty plea stage, the prosecutor, and I wasn't the prosecutor handling it, put this in front of the district court was just to show that there was substantial evidence against defendant's weight against his own fairly implausible declaration. If you can't get to a minor participant deduction reduction in the sentencing guideline calculation, how is it possible that you are so minor a participant that there's a due process violation? That would be my question as well, Your Honor. I assume that what the defendant would say is that this court sort of has to make its own assessment of, you know, I don't want to make his arguments for him, but I think what he would say is that this court has its own obligation to make the due process assessment and doesn't owe deference to the district court's later sentencing determination that he wasn't a minimal participant. You know, that's sort of... Well, he wasn't even a minor participant. I mean, if you look at the guideline calculation, I mean, they missed by two levels to getting to minimal. Your Honor, you're preaching to the choir on this. I agree with you that he was not a minor or minimal participant. In fact, what the record shows is that he gave the guns, he participated in the planning, he was a lookout, he was a serious participant, and the only reason why Sabbath ever recanted his testimony, it appears from the record that it was basically a quid pro quo, that defendant was going to cooperate against Sabbath but then agreed that he wouldn't, and seven days later, Sabbath gave favorable testimony about defendant. So in any event, Your Honors, it was not an abuse of discretion. It certainly wasn't plenary. All right. Thank you for your argument. All right. I'll give you, yeah, one minute and 13 seconds. I've got a lot of points. This last issue on the minor role of the sentencing, what happened is the government was asking for aggravating role, and the court said, no, I'm not going to do that. The defense is asking for minor roles, and I'm not going to do that. I'm in the middle, no role at all. It's our position that, number one, the standards are different. I mean, there's a burden of proof on the defendant to show by a preponderance of the evidence that he's entitled to a minor role, whereas for a due process defense in a trial, it would be the government's burden to show beyond a reasonable doubt that he didn't have such a minor role. So we're talking about dramatically different standards of proof, and so the fact that he couldn't get the minor role under the guidelines doesn't foreclose the Pinkerton-type defense. The government continually says, well, Mr. Betts admitted that it was foreseeable that the guns would be used. That's not what he admitted. He admitted it was reasonably foreseeable, and the government continually says, foreseeability, foreseeability, there's no due process defense, but they're leaving out the word reasonable foreseeability. Yes, if the defendant himself knows that the guns are going to be used, then you don't have any type of due process defense, but all he admitted was reasonable foreseeability, and that's why the due process defense kicks in. The government claims, they point to one part of the attorney's declaration that says there's no evidence here that the lawyer gave any erroneous advice. I don't have time to read it, but page 63, the lawyer flatly admits that Betts told her, I have nothing to do with this other than letting them use the, use my backyard, and she says this action, referring to that, drew him into the conspiracy both on that theory as well as on the theory of aiding and abetting. She flatly admits that that alone was enough to convict him on the substantive charges. All right, thank you for your argument. Thank you. This matter will stand submitted. AIDS Healthcare Foundation versus David Maxwell Jolly, case number 10-55633.
judges: Erickson, Fernandez, Callahan